KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant United States Attorney
California Bar Number 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JESUS DAVID GARCIA,<br><br>　　　　　　Defendant. | Criminal Case No. 08CR648-BEN<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**<br><br>**(1)　COMPEL DISCOVERY;**<br>**(2)　PRESERVE EVIDENCE;**<br>**(3)　SUPPRESS STATEMENTS**<br>**(4)　SUPPRESS INFORMATION**<br><br>**ALONG WITH UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY.**<br><br>Date:　　April 21, 2008<br>Time:　　2:00 p.m. |

　　　　Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina M. McCall, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Motions and its Motion for Reciprocal Discovery. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

///

///

# I

# **STATEMENT OF FACTS**

### B. Defendant's Apprehension

On February 28, 2008, Defendant, Jesus David Garcia, drove into the Calexico West Port of Entry. At around 4:40 a.m., Defendant was the driver and sole occupant of a 1999 Mitsubishi Mirage bearing California license plates. Defendant told Officer Rodriguez, the primary inspector, that he lived in Cathedral City, California, and had been in Mexico visiting his girlfriend. Defendant claimed that he owned the Mitsubishi. Officer Rodriguez asked Defendant how he met his girlfriend, since she lived in Mexico and he lived in the Central District of California. Defendant just looked at Officer Rodriguez with a blank stare and did not answer the question. Next, Officer Rodriguez asked when Defendant met his girlfriend. Defendant laughed tensely and changed his story. Defendant then stated that he did not visit a girlfriend, but was in Mexico to see a few girls. Because of Defendant's changing story, Officer Rodriguez referred Defendant and the Mitsubishi to secondary review for a more thorough inspection.

In the secondary inspection area, Defendant presented a California driver's license to Officer Siqueiros. Defendant said that he was a United States citizen and had nothing to declare. Defendant said that he was going back home to Los Angeles and had gone to Mexicali to visit some friends, only staying for two days. Defendant told the officer that the vehicle belonged to him, but he had not registered it under his name, because he had only purchased it a few months ago. Defendant claimed he went to Mexicali often, but used other vehicles. When Officer Siqueiros asked Defendant where he had stayed while in Mexicali, Defendant immediately responded that he stayed at a friend's house. Right after that response, Defendant changed his response and stated that he stayed in a hotel.

Officer Siqueiros then told Defendant to explain why he had given two different answers. Defendant avoided making eye contact with the officer while explaining that he stayed one night at his friend's house and the second night at a hotel. After noticing the immediate change in Defendant's behavior, Officer Sequieros told Defendant to take his wallet, unlock the Mitsubishi's doors, open the trunk, lift the hood, and stand in front of the vehicle. While Defendant was performing the tasks, he seemed nervous and unsteady, since he asked the officer to repeat the instructions after he had already performed most of the tasks. Defendant walked back and forth to the front and back of the Mitsubishi,

since he had forgotten to get the key to open the trunk. While walking back and forth, Defendant became unsteady and started looking around the lot.

When Defendant was in front of the Mitsubishi, Officer Sequieros asked Officer Pyburn to have his detector dog screen the car. When Defendant saw Officer Pyburn and the detector dog and noticed that another officer was standing right behind him, Defendant started shifting his body from side to side. The detector dog alerted to the side of the vehicle between the door and quarter panel. At this point, Officer Van Arsdall handcuffed Defendant, who did not seem to be surprised that he was being taken into custody. Officer Siquieros was able to crack open part of the quarter panel compartment with her hand and saw a package. With a screw driver, Officer Siquieros was able to remove the lid of the compartment. The substance inside the package tested positive for marijuana. Officer Sequeiros discovered an identical compartment on the other quarter panel. Each quarter panel contained 20 packages. Then, Officer Siqueiros tapped on the gas tank and noticed some new screws placed around the tank. Using a fiberoptic scope, Officer Siquieros discovered ten more packages of marijuana. The combined weight of the 30 packages was 42.22 kilograms.

At 9:45 a.m., Immigration and Customs Enforcement ("ICE") agents advised Defendant of his Miranda rights. Defendant acknowledged his rights and agreed to answer questions, signing a waiver of rights declaration. Defendant said that he lived in Cathedral City, not in Los Angeles, and that he worked at Pep Boys. Defendant said that he had been with three girls in the Mitsubishi, and that he used the Mitsubishi because he needed to get home. Defendant stated that the fuel gauge was on empty, but he never thought about needing to put fuel into the Mitsubishi. Defendant claimed no knowledge of the Nextel cellular phone found in the Mitsubishi. Defendant said that he had not intended to drive the Mitsubishi home, but the car turned into his ride home. When informed that his story about just being handed the vehicle made no sense, Defendant agreed that the story did not make sense. Defendant said that he had not gone to Mexico for years, contrary to his statements to the CBP inspectors. After further conversation, Defendant asked to speak to an attorney, and the interview was terminated.

Defendant was in possession of $750 in U.S. currency, consisting of: three hundred dollar bills and nine fifty dollar bills, with no smaller bills. Defendant refused to sign the property inventory sheet

recording the currency taken from his person. Defendant also possessed a glass pipe, commonly used to ingest controlled substances such as methamphetamine.

On March 12, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment against Defendant, charging him with: knowingly importing 42.22 kilograms of marijuana, and possessing, with intent to distribute, 42.22 kilograms of marijuana, in violation of Title 21 U.S.C. §§ 952 and 841.

## II

## UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS

### A.   ORDER COMPELLING DISCOVERY IS UNNECESSARY

   No Order is Required; The United States is Complying With Discovery Obligations

The United States has produced 47 pages of discovery as of the filing of this response, as well as a digital video recording of Defendant's post-arrest Miranda warnings. The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

   1.   Brady Material

The United States will comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). Impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

   2.   404(b) and 609 Evidence

The United States will disclose in advance of trial the general nature of any "other bad acts" evidence that it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b), and any prior convictions it intends to use as impeachment pursuant to Rule 609. The discovery materials include numerous references to Defendant's state court criminal cases.

3/4/5.   Evidence Seized

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 583-84 (9th Cir. 1984).

6.   Expert Witnesses

The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

7, 8, 9, 10, 15, 18, 19   Giglio/Henthorn Information

The United States will comply with the requirements of Giglio v. United States, 405 U.S. 150 (1972) and United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by having agencies conduct a review of government agents' personnel files in advance of trial.

11.   Witness Addresses

The United States will provide the names of the witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. The United States does not know of any individuals who were witnesses to Defendant's offenses except the law enforcement agents who apprehended him. The names of these individuals have already been provided to Defendant.

1  12.  Witnesses Favorable to Defendant

As indicated above, the United States will comply with its discovery obligations to produce information that is exculpatory to Defendant, although it has discovered no such information as of this date. To the extent that it discovers such information, the United States will provide information about witnesses who made favorable statements about Defendant.

13.  Statements Relevant to the Defense

Again, the Government is well aware of its duty to turn over any potentially exculpatory information.

14.  Jencks Act Material / Statements

The United States has or will comply with the disclosure requirements of the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

16.  Scientific Test Results

In sufficient advance of trial, the United States will provide the results of scientific tests or examinations.

17.  Cooperating Witnesses / Agreements With Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). These threshold requirements have been interpreted to require that, if any cooperating witnesses or informants were involved or become involved, Defendant

must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing regarding disclosure of the informer's identity. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386-87 (9th Cir. 1991), quoting Roviaro v. United States, 353 U.S. 53, 60 (1957). The Government does not have any agreements that would benefit any witness it plans to call at trial.

.    Training of Agents

Defendant requests copies of written policies and training manuals issued by the Department of Homeland Security regarding the handling of vehicles containing contraband, the detention of individuals within those vehicles, and the search of those vehicles and their occupants. The United States opposes this motion. Defendant cites no authority in support of this request. Defendant does not explain how Brady, Rule 16, or any other rule of disclosure require the United States to produce the requested information.

## UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Defendant. The time frame established by the rule requires the statement to be

1  provided after the witness has testified, as in the Jencks Act.  The United States hereby requests that
2  Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial
3  to be set by the court.  This order should include any form these statements are memorialized in,
4  including but not limited to, tape recordings, handwritten or typed notes and/or reports.

### III

### MOTION TO RE-WEIGH NARCOTIC EVIDENCE

The United States does not oppose the motion to re-weigh the narcotic evidence.

### IV

### DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED

1.     Defendant's Motion Should be Denied Without a Hearing

Contrary to Defendant's request, the Court should deny the motion to suppress without a hearing. Under Ninth Circuit precedent and Southern District Local Criminal Rule 47.1(g)(1), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant puts forth, in a declaration, sufficient facts to require a factual finding. United States v. Batiste, 868 F.2d 1089, 1098 (9th Cir. 1989) ("defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not required to hold an evidentiary hearing."). "A hearing will not be held on a defendant's pretrial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue exists such that a hearing is required.'" United States v. Howell, 231 F.3d 615, 621(9th Cir. 2000) (citations omitted).

Here, Defendant has failed to support his allegations with a declaration, in clear opposition to Local Rule 47.1(g). Defendant also fails to provide any factual support that a violation of Miranda occurred.  This Court should deny Defendant's motion to suppress the statements he made to officials on the day of his arrest.

2.     Defendant Was Not In Custody In the Primary or Secondary Inspection Lots When he Gave Statements

An individual is in custody if considering the circumstances surrounding an interrogation "a

1  reasonable person . . . felt he or she was not at liberty to terminate the interrogation and leave."
2  Thompson v. Keohane, 516 U.S. 99, 112 (1995).  Relevant circumstances to the custody analysis
3  "include the language used by the officers, the physical characteristics of the place where the question
4  occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the
5  extent to which the person was confronted with evidence of guilt."  United States v. Butler, 249 F.3d
6  1094, 1099 (9th Cir. 2001).

7       "Stops and routine questioning are the norm at the border in the primary inspection areas. In most
8  cases, the earliest that a person could be in custody is at the point when she is moved into a secondary
9  inspection area and asked to exit her vehicle while it is searched."  United States v. Leasure, 122 F.3d
10  837, 840 (9th Cir. 1997).  Leasure determined that "[o]bjectively, there was nothing to suggest that
11  Leasure was in custody before she was asked to step out of her vehicle" when the inspector "asked her
12  several questions as to why she went to Mexico and what she had done there."  Id.

13       In the recent case of United States v. Hernandez, 476 F.3d 791 (9th Cir. 2007), the Ninth Circuit
14  found that Hernandez was in custody in the vehicle secondary lot, under circumstances much more
15  extreme than this case.  Hernandez and his traveling companion, Ortega, were referred to secondary
16  inspection after both of them seemed anxious.  Id. at 794.  Once Hernandez and Ortega arrived in the
17  secondary lot, they were patted down for weapons.  Id.  Hernandez was surrounded by six CBP officers,
18  ordered out of the car, ordered to place his hands on top of the vehicle, and subjected to a pat-down
19  search.  Id. at 796.  If Hernandez had tried to leave, he would have been stopped by the officers.  Id. at
20  794.

21       The questioning at primary did not display any indicia of custody, a point that Defendant seems
22  to concede when he argues "When Border Patrol [sic] interrogated Mr. Garcia at secondary, no
23  reasonable person could have felt free to leave."  [Defendant's motion at page 6.]  Therefore, the
24  statements Defendant made at primary inspection should be admitted.

25       Likewise, the statements Defendant made to Officer Siqueiros in secondary inspection should
26  be admitted.  This case involves very different circumstances from Hernandez.  All of the questions
27  Officer Siqueiros asked Defendant in the secondary area were asked while Defendant was still inside his
28  car.  During the questioning, Officer Siqueiros focused on questions about why Defendant went to

Mexico and what he had done there, like the officer in Leasure. Officer Siquieros was working alone while questioning Defendant; by the time the narcotics detector dog arrived and Defendant was ordered out of his vehicle, the questions had terminated. Defendant was not patted down for weapons until he was taken into the vehicle secondary office, after all of Officer Siquieros' questions had already terminated.

Considering all the circumstances of the limited questions Officer Siquieros asked during the secondary inspection process, Defendant was not in custody. Therefore, no Miranda warnings needed to have been given before asking routine questions about why Defendant went to Mexico, what he had done there, and where he was traveling in the United States. The statements Defendant made at secondary inspection should be admitted.

3.   Defendant's Statements to Officers and Agents Were Voluntary

The atmosphere surrounding Defendant's statements at the port indicates his statements were voluntary and not coerced. There is no evidence of any threats, physical beatings, undue psychological pressure, or coercive tactics. The circumstances indicate that Defendant's statements were the product of a rational intellect and free will, not by physical intimidation or psychological pressure.

4.   The ICE Agents Complied With Miranda Before Beginning the Post-Arrest Interview

Defendant was informed of the Miranda rights. It is difficult to see what is wrong with the prophylactic protections phrased almost identically to those in the Miranda case itself. This warning is not defective. Defendant signed the "statement of rights" form, and initialed each of the rights that were read to him, before speaking about the offense. Defendant further indicated that he understood the Miranda rights when he invoked his right to speak with an attorney before continuing with the interview, a request that the agents scrupulously honored.

5.   Defendant Knowingly, Voluntarily and Intelligently Waived His Rights

The case agent read the Miranda warnings to Defendant. Defendant signed the waiver form and wrote his initials next to each of the enumerated rights. The environment was free of physical intimidation; Defendant was not handcuffed during the interview, which took place in a well-lit room with two plain-clothes agents present. The length of detention preceding the post-arrest interview was within the six hours deemed presumptively voluntary. Nothing about this routine post-arrest interview

1  suggests that Defendant was forced to make statements. All the evidence indicates that Defendant
2  knowingly, voluntarily, and intelligently waived his rights. His statements should be admitted.

## V

## THE CELLULAR PHONE CALL LIST SHOULD NOT BE SUPPRESSED UNTIL THIS COURT HOLDS AN EVIDENTIARY HEARING

During his post-arrest interview, Defendant claimed no knowledge of the Nextel cellular phone found in the Mitsubishi. This means that he has no Fourth Amendment standing to challenge the results of the Nextel Boost mobile phone search. To determine whether Defendant's Verizon cellular phone was searched incident to arrest or as part of a routine booking procedure, the government agrees that a pre-trial hearing is necessary. This Court must make detailed factual findings about when and where the list of recent calls and stored numbers was made, and the record is insufficient to make such findings without a hearing outside the presence of a jury.

## V

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's motions, except where not opposed, be denied and the United States' motion for reciprocal discovery be granted.

DATED: April 22, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ Christina M. McCall

CHRISTINA M. McCALL
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                              Plaintiff,   )<br>                                        )<br>        v.                              )<br>                                        )<br> JESUS DAVID GARCIA,                    )<br>                              Defendant. )<br>                                        ) | Case No. 08CR0726-DMS<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY, SUPPRESS EVIDENCE on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Bridget Kennedy, Esq.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 22, 2008.

/s/ Christina M. McCall
CHRISTINA M. McCALL